In re Jeannette R. GUILBERT, Debtor.

Bankruptcy No. 93–12485.

United States Bankruptcy Court, D. Rhode Island.

March 23, 1994.

Steven A. Kressler, Kressler, Kressler & Pitnof, Worcester, MA, Joseph DiGianfilippo, Sutherland & DiGianfilippo, Woonsocket, RI, for debtor.

Peter J. Brockmann, Law Offices of Stephen J. Schechtman, Providence, RI, for Rhode Island Depositors' Economic Protection Corp.

Andrew Richardson, Boyajian, Harrington & Richardson, Providence, RI, for Chapter 13 Trustee.

## DECISION AND ORDER DENYING DEBTOR'S REQUEST TO MODIFY MORTGAGE

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on December 16, 1993, to consider confirmation of the Debtor's Chapter 13 plan. The Rhode Island Depositors' Economic Protection Corporation ("DEPCO"), a secured creditor, objects to plan confirmation on the ground that the Debtor's plan attempts to modify its secured interest in real estate (which serves as the Debtor's principal residence), in contravention of 11 U.S.C. § 1322(b)(2) and *Nobelman v. American Savings Bank*, — U.S. —, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993).

Upon review and consideration of the memoranda submitted by the parties,[1] we agree with DEPCO that the Debtor's plan, as presently proposed, is not confirmable. The thrust of the Debtor's argument is that the subject property is comprised of a three unit dwelling, one of which is occupied by the Debtor, one by the Debtor's son (who is the co-owner and co-mortgagor of the property), and a third unit that is only occasionally rented, placing the property outside the restrictive parameters of § 1322(b)(2). Simply put, the Debtor contends that since the property is not used *exclusively and entirely* as her personal residence, but includes two additional rental units, "DEPCO is secured by a security interest in *more than* the debtor's primary residence." (Am.Mem.Supp.Debtor's Complaint to Determine Secured Status, at 3).

This argument, we find, is contrary to the literal reading of the statute as well as the teachings of *Nobelman*. Section 1322(b) provides in pertinent part that the plan may modify the rights of holders of secured claims "other than a claim secured only by a security interest in real property that is the debtor's principal residence." This phrase does not say, nor does it in any way imply that if the debtor's principal residence is also used to house other tenants, paying or otherwise, that it may be open to modification by the home owner. Rather, as the Supreme Court discussed in *Nobelman*, — U.S. —, —, 113 S.Ct. 2106, 2109, the restriction on modification covers the situation where the lender has only one form of security, the primary residence,[2] irrespective, we believe, of whether the property is also used for other purposes by the debtor. In addition, the facts here do not support the Debtor's statement that DEPCO is secured in more than her primary residence. DEPCO is secured in real estate which serves as the Debtor's primary residence, and which also happens to be the residence of others. However, DEPCO has no other collateral with which to enforce its rights as a secured creditor.

Significantly, Justice Stevens in a concurring opinion in *Nobelman* expressed the following sentiment regarding this provision, in

---

1. The procedural record in this case is somewhat confusing. Prior to the hearing on confirmation, the Debtor filed an adversary proceeding against DEPCO to determine its secured status in the real estate, in light of her intention to strip down the mortgage. Thereafter, the issue was raised in opposition to confirmation, after which we ordered the submission of legal briefs, and held confirmation under advisement. However, the parties filed their legal memoranda in the adversary proceeding and not in the bankruptcy case where the matter was being held *sub judice*.

Since the only matter presently before us is whether to approve confirmation of the Debtor's Chapter 13 plan, we will treat the memoranda as having been filed in the bankruptcy case.

2. "Section 1322(b)(2) ... allows modification of the rights of both secured and unsecured creditors, *subject to special protection for creditors whose claims are secured only by a lien on the debtor's home*." *Nobelman*, at —, 113 S.Ct. at 2109 (emphasis added).

**90**

light of the clear legislative purpose in its enactment:

> the legislative history indicat[es] that favorable treatment of residential mortgagees was intended to encourage the flow of capital into the home lending market. (citation omitted). It therefore seems quite clear that the Court's literal reading of the text of the statute is faithful to the intent of Congress.

*Nobelman,* at ——, 113 S.Ct. at 2112.

Having been given no persuasive contrary authority, we must follow *Nobelman's* direction in giving the cited language its literal meaning, which does not contain or imply an exclusion for real property that, in addition to being used as the debtor's primary residence, might also be used for other purposes.[3]

Accordingly for the foregoing reasons, it is ORDERED that confirmation of the Debtor's plan, as presently proposed, is DENIED.

Enter Judgment consistent with this opinion.

---

**3.** This conclusion appears to be inescapable, if one considers the lengths that could be drawn to avoid the consequences of the anti-modification clause against debtors, i.e. use of a portion of one's primary residence as a home office; repairing automobiles in one's garage; raising livestock in the backyard, to name a few. It is precisely for this reason that *Nobelman* reminds us of the legislative purpose in enacting the restrictive provision, i.e. to insulate the residential lending market from certain negative effects of bankruptcy. Accordingly, to maintain uniformity of result, we must apply this section literally, and may not "split hairs" to accommodate certain debtors.