**In re Elissa H. BECKFORD, Debtor.**

No. 99–22228.

United States Bankruptcy Court, D. Connecticut.

March 29, 2000.

Robert A. Cushman, Pite & Cushman, LLC, Newington, CT, for Elissa H. Beckford.

Patrick Crook, The Witherspoon Law Offices, Farmington, CT, for United Companies Lending Corporation.

Andrew W. Canella, Hartford, CT, for Molly T. Whiton, Chapter 13 Trustee.

## RULING SUSTAINING OBJECTION AND DENYING CONFIRMATION OF CHAPTER 13 PLAN

ROBERT L. KRECHEVSKY, Bankruptcy Judge.

### I.

At issue in this proceeding is whether the court may confirm a Chapter 13 plan which modifies a first mortgage on the debtor's principal residence by "stripping it down" to the fair market value of the residence, notwithstanding Bankruptcy Code § 1322(b)(2) (plan may "modify the rights of holders of secured claims other than a claim secured only by a security interest in real property that is the debtor's principal residence."). Elissa H. Beckford ("the debtor") claims the plan may do so because the mortgage held by United Companies Lending Corporation ("the creditor") is not secured *only* by the debtor's residence and thereby loses the § 1322(b)(2) protection. The creditor filed an objection to plan confirmation at the hearing held on February 16, 2000.

### II.

The debtor, who filed her petition under Chapter 13 on June 25, 1999, owns a single-family house located at 67–69 East Euclid Street in Hartford, Connecticut, at which she resides ("the property"). The property description in the deed by which the debtor obtained title is as follows:

> a certain piece or parcel of land with the buildings and improvements thereon, ... known as Nos. 67–69 East Euclid Street, also known as Lots Nos. 19 and 20, Block 15 on a map entitled, "Bluefields, Property of Elva A. Simpson, Blue Hills ave., Hartford and Bloomfield, Conn. Scale 1″ = 100′ May 1913 Spencer & Washburn Engineers," which map is on file in the Town Clerk's Office. . . .

The Hartford Tax Collector issues separate tax bills for adjacent lots 19 and 20 as the two lots are separately assessed. Each lot has 50 feet frontage on East Euclid Street and is 100 feet deep. The house, built in 1915, is located only on lot 19. The present Hartford zoning regulations covering the property require a minimum lot size of 6,000 square feet for development.

John O'Malley ("O'Malley"), the creditor's real estate appraiser, testified that the property was separated from the street by a hedge that runs across both lots; that a paved driveway is located on lot 20 to provide the only vehicle access to off street parking for the house located on lot 19; and that separate development of the lots, even if permissible, was not economically feasible because neither lot alone would be sufficiently large to accommodate both a house and off street parking.

The court, on January 11, 2000, had held a hearing on the debtor's motion, filed pursuant to Bankruptcy Code § 506(a) and Fed.R.Bankr.P. 3012, to determine the value of the claims secured by the property. Thereafter the court issued an order finding that, as of the date of the bankruptcy petition, the claim of the creditor was $104,306.06; that the fair market value of the property was $58,000; that after a reduction for priority tax and water liens totaling $3,317.19, the creditor held a secured claim of $54,682.81 and an unsecured claim of $49,623.25.

Under the debtor's plan, the creditor's mortgage would be modified and "stripped down" to $54,682 with the unsecured portion to receive no dividend. The debtor contends that since the creditor's mortgage covers two separate lots, only one of which is the debtor's residence, the mortgage is not protected by § 1322(b)(2) and the debtor may modify the mortgage.

The creditor asserts the two lots should not be treated as separate collateral and that together they comprise the debtor's residence. In addition, the creditor argues lot 20 is not saleable as a building lot because present Hartford zoning regulations require a minimum lot size of 6,000 square feet. The debtor responds that lot 20 remains a saleable lot in light of the provisions of § 35–13 of the Hartford Municipal Code:

> Any lot in single ownership, which was a lot of record at the time of adoption of this chapter, that does not meet the requirements of this chapter for required lot area and lot width, may be utilized for any use permitted in the zoning district in which the lot is located, provided all the requirements for such zoning district, except the required lot area and lot width, are met on such lot. Hartford, Conn., Municipal Code § 35–13 (1977).

Accordingly, the debtor argues, lot 20 has been "grandfathered in," and the debtor may sell it as a buildable lot.

### III.

The court concludes that the debtor's arguments are not persuasive and that the creditor's objection must be sustained. The debtor relies on the holding in *In re Maddaloni*, 225 B.R. 277 (D.Conn.1998) to justify her claim of construing the creditor's mortgage to cover more property than just the debtor's residence. The debtor's reliance on *Maddaloni* is misplaced. *Maddaloni* concerned a mortgage encumbering a single lot that contained a two-family house. The court's holding, that because the property was used to produce income as well as to house the debtor's family, the non-modification provisions of § 1322(b)(2) were inapplicable, lends no support to the debtor's argument. In *Maddaloni*, the court looked to the use made of the property encumbered by the mortgage, not to whether the dwelling units had the potential to be physically separated or sold individually, to determine whether the mortgage secured property that was used for some purpose other than the debtor's residence. *See also In re Del Valle*, 186 B.R. 347 (Bankr.D.Conn. 1995) (mortgage on two-family house may be modified); *In re Adebanjo*, 165 B.R. 98 (Bankr.D.Conn.1994) (same regarding three-family house). On the other hand, a mortgage secured by a large parcel of land used solely as the debtor's residence may not be modified. *See Adebanjo*, 165 B.R. at 103 (citing cases that have so held).

The Bankruptcy Appellate Panel ("the B.A.P.") for the First Circuit recently sustained a mortgagee's objection to plan confirmation in circumstances analogous to those presently before the court. *GMAC Mortgage Corp. v. Marenaro (In re Marenaro)*, 217 B.R. 358 (1st Cir. BAP 1998). In *Marenaro* a mortgage was secured by three lots of record. The three lots were taxed separately and the debtor's single-family house was located on one of the lots. There, as here, the debtor argued that the lots had the potential to be sold and developed separately, although they were actually being used for a yard and parking area. The B.A.P. held that, "If an abstract potential to use property in a different way, never amounting to a gleam in the eye of the owner at the time the mortgage is given, can withhold the protection of the anti-modification language from a mortgagee, then virtually every mortgage would be subject to modification. This interpretation would contradict the legislative history indicating that treatment of residential mortgages was intended to encourage the flow of capital into the home lending market." *Id.* at 360–61 (ci-

tations and internal quotation marks omitted).

In the present matter, the court finds that the evidence presented supports a finding that the two lots at issue have been used together to provide a single-family residence for the debtor's family and for no other purpose. The location of the driveway and off-street parking area supports the conclusion that, although the house may be located within the confines of one lot, both lots have been used together as one residence. The debtor has presented no evidence that she has ever used any portion of the property for any purpose other than her principal residence.

In addition, the court finds that Connecticut case law does not support the debtor's argument that lot 20 is saleable as a building lot. The Appellate Court of Connecticut has interpreted language similar to that in Hartford Municipal Code § 35–13 as permitting development of substandard lots only if, as of the date of the regulations, the owner did not own any adjacent land. *Neumann v. Zoning Bd. of Appeals of the Borough of Stonington,* 14 Conn.App. 55, 60, 539 A.2d 614 (1988) ("Under many zoning ordinances, where a lot became substandard by virtue of the passage of more restrictive zoning regulations, and where that lot was at the time of the passage of that legislation under common ownership with that of an adjacent lot, such zoning regulations have refused to continue to recognize the separate validity of that lot. The common exception of lots which were recorded prior to the effective date of a restrictive ordinance is limited to lots which were in single and separate ownership on that date. Under such a provision, an owner is entitled to an exception only if his lot is isolated. If the owner of such a lot owns another lot adjacent to it, he is not entitled to an exception. Rather, he must combine the two lots to form one which will meet, or more closely approximate the frontage and area requirements of that ordinance.") (quoting 2 Anderson, American Law of Zoning (3d

Ed.) § 9.67) (internal quotation marks omitted).

## IV.

For the foregoing reasons, the court concludes that the creditor's objection to confirmation of the debtor's proposed Chapter 13 plan must be sustained and confirmation be denied. It is

SO ORDERED.